JUAN Y JOSÉ A. HERNÁNDEZ, demandantes y apelados, *v.* BENJAMÍN OTERO, demandado y apelante.

No. 4337.—*Sometido:* Junio 27, 1929. *Resuelto:* Abril 30, 1930.

*Adrián Agosto, abogado* del apelante; *Celestino Benítez* abogado de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Juan y José A. Hernández se comprometieron a construir una casa para Benjamín Otero, por la suma de $5,200, y alegando haber cumplido su contrato realizando además obras adicionales por valor de $250, y haber recibido en pago únicamente $4,900, entablaron esta demanda en reclamación de los $550 restantes.

Benjamín Otero contestó aceptando la celebración del contrato y el pago de $4,900 únicamente, alegando que si no había pagado los $550 restantes se debió a que los demandantes violaron el contrato construyendo el zócalo a una altura de dos pies y medio en vez de tres, no usando madera de primera calidad como se especificó, dejando los pisos de madera sin la solidez necesaria y colocando desigualmente las piezas en los de loza, motivo por el cual recibió la casa bajo protesta comprometiéndose los demandantes a reparar los defectos y él a pagarles los $550 cuando lo efectuaran, y que los demandantes no han hecho las indicadas reparaciones.

Fué el pleito a juicio y apreciando la prueba practicada la corte de distrito dictó sentencia favorable a los demandantes. Fundando su sentencia·el juez se expresa, en parte, así:

"Los demandantes Juan y José A. Hernández, así como los testigos Tomás Silva y Juan Salcedo han declarado sobre las obras que se hicieron en la casa en construcción, y especialmente, sobre las obras adicionales que se hicieron por orden del señor Cándido Fernández, actuando como apoderado y representante del demandado Benjamín Otero.

"El mismo señor Cándido Fernández, apoderado del demandado

admite en su declaración, que ellos convinieron en hacer ciertas adiciones al contrato primitivo.

"Los testigos del demandante, a saber: Juan Hernández, José A. Hernández, Tomás Silva y Juan Salcedo, declaran que estuvieron presentes en la obra ya terminada, en 15 de enero de 1925, y que ese día fué entregada la obra a don Cándido Fernández, apoderado del demandado, y que este señor Fernández recibió la obra a su satisfacción.

"Los demandantes Juan Hernández y José A. Hernández, declararon que el día 15 de enero de 1925, al entregarle la obra al Sr. Cándido Fernández, éste les entregó cierta cantidad de dinero, pero quedó a deberles la suma de $550.00, diciéndole a los contratistas que esperaran 'hasta pasado mañana', que de momento no tenía ese dinero; pero sin hacerles ninguna objeción contra la obra, la que quedó recibida a satisfacción del Sr. Fernández; y que hasta la fecha no les ha sido pagada dicha suma de quinientos cincuenta dollars ($550.00).

"Los demandantes Juan y José A. Hernández declararon además que allí, en la obra, el día 15 de enero de 1925, se firmó un recibo a favor del Sr. Cándido Fernández por el dinero recibido aquel día, el cual recibo estaba escrito con tinta y pluma al dorso de la copia del contrato que tenía en su poder el señor Cándido Fernández, y que al dorso de esa misma copia del contrato, habían firmado otros recibos los demandantes, cada vez que recibían dinero del Sr. Fernández.

"Todos los testigos del demandante (excepto el Márshal Prida) declararon que en la casa en construcción no había maquinilla de escribir.

"El demandado, representado por su apoderado Sr. Cándido Fernández, ha presentado en evidencia un recibo (Exhibit No. 1 del demandado), que copiado literalmente lee como sigue:

" 'Recibimos al entregar la casa, el total de $4,900.00 y como el señor Fernández no la quiere recibir alegando que no está de acuerdo con el contrato dejamos en su poder la cantidad de $550.00 como garantía hasta poner dicha casa de acuerdo con el referido contrato. —1/15/1925.—José A. Hernández.'

"Este recibo aparece firmado 'José A. Hernández.'

"El demandante José A. Hernández negó rotundamente la firma que aparece al pie de dicho recibo.

"La parte demandada parece descansar totalmente su defensa en el mencionado recibo, y al efecto, presentó como perito calígrafo para el cotejo de dicha firma con la indubitada de José A. Hernández, que aparece en el juramento contenido en la demanda enmendada de

fecha 24 de octubre de 1925, al señor Pedro Carlos Timothee; llegando el perito a esta conclusión: 'que ambas firmas reúnen los caracteres de ser escritas por una misma persona.'

"El referido perito Sr. Timothee fué preguntado y repreguntado ampliamente por ambas partes y, a repreguntas del abogado de la parte demandante, contestó: 'Que la firma del recibo (Exhibit No. 1 del demandado) cree que está hecha con lápiz tinta.'

"El Juez de la Corte en el acto de la vista, hizo al perito las siguientes preguntas tal como constan en el récord taquigráfico:—

" 'P.—Dígame testigo, es posible imitar una firma de tal manera que se haga difícil para un perito establecer diferencia?

" 'R.—Puede que la imitación esté tan bien hecha que ofrezca alguna dificultad, pero yo le llamo la atención a su señoría: mientras más perfecta la imitación, más fácil es probarla, porque el que escribe lo hace de una manera natural, escribiendo, y el que imita no escribe, sino que dibuja y mientras más perfecto es el dibujo, menos escritura hay.

" 'P.—Pero tal como está el mundo hoy, con los adelantos que hay en el mundo y además Ud. con su experiencia como perito calígrafo, habrá encontrado alguna vez, alguna firma, que aún habiéndola declarado Ud. como no genuina, sin embargo no sea una copia servil de la que se trató de imitar?

" 'R.—Puede ocurrir que haya un individuo que haya examinado diez o doce firmas de otro y la haya imitado de una manera tan bien, que llegue a hacerla con casi la misma naturalidad que la persona que la escribió y que esa firma comparada con otra pueda estar en duda, y la imitación muy bien hecha; entonces el examen tiene que ser muy detenido para poder llegar a descubrir la semejanza.

" 'P.—Y qué trabajos preliminares fuera de la Corte le hacen a Ud. dar la opinión que da ahora?

" 'R.—En estudiar estos documentos no he tenido necesidad de usar aparatos, porque como los caracteres de ambas firmas son tan claros. . . . . .

" 'P.—Ha sido a simple vista?

" 'R.—Sí, señor, y auxiliado de un vidrio de aumento.'

"De la declaración del perito calígrafo que dejamos transcrita en la parte pertinente y necesaria, no resulta a nuestro juicio una base segura y firme para resolver si la firma del recibo (Exhibit No. 1) es o no del demandante José A. Hernández.

"Hay otros elementos probados en el caso que demuestran a la Corte que el recibo (Exhibit No. 1) es altamente sospechoso en lo

que se refiere a su autenticidad y otorgamiento. En efecto, haciendo un mayor análisis de la evidencia, resulta lo siguiente:

"Que el recibo está escrito en maquinilla, todo escrito en letras mayúsculas, empleando una (r) minúscula en la abreviatura de la palabra 'señor' en la línea segunda de dicho recibo, y empleándose dos ceros escritos con (o) minúscula en la línea cuarta del mismo. Con estas excepciones, todo lo demás está escrito con carateres mayúsculos. Esto es contrario al orden natural de la escritura, pues las mayúsculas sólo se emplean al principio del párrafo y como iniciales de nombres propios, etc.

"El testigo Cándido Fernández declaró bajo juramento: 'Que la firma que aparece al pie de dicho recibo fué puesta en su presencia por el demandante José A. Hernández y escrita con tinta, con una pluma fuente, con tinta azul.' Por el contrario, el perito calígrafo señor Timothee declara en su dictamen: 'que cree que esta firma está hecha con lápiz tinta'. Y de la simple inspección de dicha firma aparece estar escrita con lápiz tinta, efectivamente.

"El testigo señor Cándido Fernández, principal testigo de la parte demandada y apoderado del demandado, declaró que el recibo en cuestión (Exhibit No. 1) lo escribió el propio testigo en una maquinilla Oliver No. 9 que había comprado a Sánchez Morales. Los testigos José A. Hernández y Juan Hernández declararon que el recibo que se firmó estaba manuscrito, y no escrito en maquinilla. Pero lo más sospechoso que hay con respecto al recibo (Exhibit No. 1), es lo siguiente, según resulta de la evidencia:—

"La parte posterior del papel que contiene el recibo (Exhibit No. 1), contiene escritas en maquinilla la última línea de la cláusula décima del contrato y además completas las cláusulas 11 y 12 del mismo y tres líneas de la No. 13, también de dicho contrato.

"El testigo y apoderado de la demandada, Sr. Cándido Fernández, al declarar presentó la primera hoja completa de una copia del contrato y, además presentó unos fragmentos con los cuales trató de reconstruir la segunda hoja de dicho contrato (el contrato consta de dos hojas escritas en maquinilla), y trató de reconstruirla en presencia de la corte; y al efecto fué colocando en primer lugar, y como cabeza de la hoja, la parte a cuyo dorso está escrito el recibo (Exhibit No. 1). Inmediatamente debajo, colocó otro fragmento de papel conteniendo las clusulas 14, 15 y 16 del contrato, pero conteniendo este fragmento un gran hueco en que falta papel y en cuyo hueco desaparece totalmente el sitio donde debía estar la firma de José A. Hernández.

"Examinando a primera vista el contrato que así se pretendió

reconstruir, aparece que lo escrito al dorso del recibo en maquinilla, como conteniendo las cláusulas 11, 12 y 13 del contrato, lo está con un color de papel cabón distinto del resto de lo escrito en maquinilla que aparece en el segundo fragmento del contrato reconstruído, y que comprende este segundo fragmento desde la cláusula 14 hasta la última; lo que, a primera vista, da la impresión de que el fragmento que contiene el recibo (Exhibit No. 1) no formaba parte integrante del mismo cuerpo de papel en que aparecen las cláusulas 14, 15, 16 y 17 de dicho contrato.

"También aparece que el ancho del papel en que está escrito el recibo (Exhibit No. 1), es menor que el ancho de los otros fragmentos que se han usado para tratar de reconstruir el contrato. Eso aparece a la simple vista, por lo que la corte llega a la conclusión de que el fragmento de papel en que se ha escrito el recibo (Exhibit No. 1), no pertenece a la misma copia del contrato a la cual pertenecían los otros tres fragmentos que presentó el testigo Fernández para reconstruir la segunda hoja de la copia del contrato.

"La Corte ha hecho todas estas especificaciones tan minuciosas en esta relación del caso, porque en el mismo hay evidencia contradictoria entre las declaraciones de los demandantes Juan y José A. Hernández y la declaración del principal testigo de la parte demandada Sr. Cándido Fernández; y la ley No. 25 aprobada en 12 de junio de 1925, le impone a la Corte el deber imperativo, en casos de evidencia contradictoria, de expresar claramente las razones por las cuales le merece crédito un testigo, y no le merece crédito otro que declara en sentido contrario a éste. Y en este caso concreto, la Corte resuelve el conflicto de evidencia declarando, por todo lo anteriormente expuesto, que no le merece crédito la declaración del testigo de la demandada, Cándido Fernández, en cuanto su testimonio está en contradicción con los testimonios de los testigos de la parte demandante, y especialmente, con los testimonios de los demandantes Juan y José A. Hernández, y por el contrario, declara que los testimonios de estos demandantes le han merecido entero crédito. La Corte declara que la prueba es preponderante a favor de la parte demandante (Artículo 162 de la Ley de evidencia); y declara expresamente que se han probado satisfactoriamente todos y cada uno de los hechos alegados en la demanda enmendada."

No conforme el demandado apeló alegando como único error que la corte sentenciadora abusó de su poder discrecional al resolver el conflicto de la evidencia en contra suya.

Repetidamente hemos estudiado este caso y siempre

hemos tenido dudas con respecto a la resolución que debemos dictar. Estudiando la prueba y los razonamientos contenidos en el alegato de la parte apelante, nos ha parecido muchas veces que la verdad está contenida en el recibo que aparece firmado al dorso del contrato de construcción por uno de los demandantes. Sin embargo, el juicio contrario del juez sentenciador está expresado de modo tan firme y convincente en su relación del caso y opinión y nuestra jurisprudencia sobre la materia es tan clara y se basa en razones tan sólidas, que otras tantas veces nos hemos detenido ante dicho criterio como ante una barrera infranqueable.

Siendo ello así, nos vemos finalmente obligados a confirmar la sentencia porque nuestras dudas, aunque subsisten, no son de tal naturaleza que nos permitan concluir que el juez sentenciador abusó de su poder discrecional al dirimir el conflicto existente entre la evidencia aportada por los demandantes y la aducida por el demandado en contra de éste.

*Debe confirmarse la sentencia recurrida.*